IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

JAMES P. CALCARA,            )
                             )
    Plaintiff,              )
                             )
v.                           )   Case No. 04-0220-CV-W-HFS
                             )
PPG, INDUSTRIES, INC. and    )
CONTINENTAL CASUALTY COMPANY,)
                             )
    Defendants.             )

**ORDER DENYING DEFENDANTS' MOTION FOR RECONSIDERATION**

In this ERISA litigation seeking disability benefits the court has granted plaintiff's motion for summary judgment and denied the motion of defendant employer and its insurer. <u>Calcara v. PPG Industries and Continental Casualty Co.</u>, 2006 WL 770627 (W.D. Mo. 2006).[1] The ruling was by a preliminary memorandum, sketching the rationale of the court. Now pending is briefing on defendants' motion for reconsideration, suggestions in opposition and defendants' reply. Docs. 82, 83, 84. For reasons set forth below, the motion will be denied.[2]

Plaintiff, allegedly employed for almost three decades in the automotive paint industry, was employed at PPG, formerly Pittsburgh Plate Glass, and its predecessors beginning in 1990. His work as a Technical Sales/Service Representative required him to work with that company's customer accounts such as General Motors. He was engaged in "hands on work" requiring that he

---

[1]Both sides having filed motions it is clear there are no issues to try and final judgment will ultimately be appropriate, as in <u>Pompe</u>, infra.

[2]Remaining pending is the issue of damages, which defendants contend must be credited with Social Security disability benefits that have been granted and workers compensation benefits, apparently granted but subject to a pending appeal.

"go out on the plant floor and actually work near and around paint products in order to service customers' needs" CL 116 (Administrative Record). After making an initial medical complaint and leaving work permanently in May, 2000, he claimed disability benefits in 2001 because of a lung condition, described by his physician as "severe reactive airway disease, secondary to exposure to isocyanates at work". CL 138. The lung condition was confirmed by "abnormal chest x-rays and chest CT". By April, 2001, eleven months after his first complaints, plaintiff remained on medication but was "doing better now that he is not exposed to isocyanimedes." He was "feeling well as long as he doesn't exercise but unfortunately when he does exercise he still has significant problems." CL 146. Records of the insurer indicate that "once sensitized" there is a reaction to lower concentrations of "organic dust." CL 104. This includes "paint fumes in general". CL 112. As noted by Dr. Bownik a year after the first complaint, simply being "out in the yard" caused plaintiff to notice "increased problems with shortness of breath." CL 013.

Plaintiff's claim of long term disability was first rejected by the insurer on August 24, 2001. Defendant's theory was that "both Dr. Henry and Dr. Bownik [plaintiff's treating physicians, including a specialist] indicate that your only restriction is that you are not exposed to isocyanides", and that "only one account uses isocyanides and ventilation controls are in place to minimize exposure". CL 106. Reconsideration was available. The initial rejection was reiterated by letter dated October 22, 2001, stating that the information "does not provide us with medical evidence that your client's condition is disabling outside of the policy provisions as outlined in our previous letter." CL 011. After "comprehensive review" on appeal there was a final rejection on December 5, 2001. CL 001. The ruling on appeal adopted the initial rejection, with the revised theory that there had been a period of disability, but it was not shown to have existed "through the elimination

2

period [of 365 days] and beyond in order to be eligible for benefits." The final ruling reiterated that "only one (customer) account . . .may use isocynates" and that plaintiff's work required one visit a month; further that he would "not be in an unventilated area". The appeals committee said the medical evidence shows "significant improvement." In addition to the yard work mentioned above, the committee did note "another exacerbation of asthmatic bronchitis attack on 7/12/01" but observed that it responded to treatment.[3]

In defense of the adverse rulings, defendants in briefing rely on two theories: (1) only one rare form of chemical exposure was proscribed by plaintiff's treating physicians, and (2) failure to have symptoms once plaintiff was removed from harmful exposure shows a discontinuance of the disability. Plaintiff contends there is no evidence contrary to his contention and that of his doctors that he has damaged, oversensitized lungs, and that avoidance of exposure does not defeat his contention that he has a disabling lung condition. I agree with plaintiff, and again conclude that the contrary views are clearly unreasonable.[4] There is no substantial showing, taking the record as a whole, supporting the adverse conclusions.

---

[3]A more elaborate review of the record is contained in the briefing, but the two issues on which there needs to be a factual focus can, in my judgment, be easily reviewed from the above excerpts. The rejection letters are quite summary in nature.

[4]In the interest of avoiding further delay and complication I will follow Judge Laughrey's lead in using the lowest possible level of scrutiny on review, short of rubber-stamping the work of the insurance company; that is, invoking the arbitrary and capricious standard, rejecting patently unreasonable conclusions. Pompe v. Continental Casualty Co., 119 F. Supp. 2d 1004 (W.D.Mo. 2000). In Judge Limbaugh's ruling for claimant which has been much debated, and which went through an aborted appeal, he also used as an alternative rationale the view that "no reasonable person could reach Continental's conclusion". Dieser v. Continental Casualty Company, Case No. 4:03cv21 SNL (E.D.Mo. August 26, 2004) (Slip Op. 19). I am not rejecting Judge Limbaugh's advocacy of enhanced scrutiny in his case and mine, but leave it to counsel on any appeal to debate the issue further as an alternate ground for recovery. An additional citation supporting enhanced scrutiny would be Woo, infra.

II.

Because the doctors on occasion directed plaintiff to avoid isocyanides the review of the claim assumed that the doctors concluded that exposure to other fumes and chemicals were not harmful to plaintiff, even though he had a sensitized lung condition. In traditional terminology used by professionals engaged in interpretation, the claims man followed the theory that "expressio unius in other words, est exclusio alterius." See discussion by Justice Souter in a dissenting opinion in Custis v. United States, 511 U.S. 485, 501-2 (1994). Such a method of reasoning is "notoriously unreliable" and a "dangerous master to follow" except as a make-weight or supporting theory when consistent with the purpose and context of the writing. Scholars "have long savaged the expressio canon" when it is "made to do the work of a conclusive presumption". 511 U.S. at 502. Assuming anything not specifically forbidden is permissible is "pushing to an unreasonable extreme the doctrine of expressio unius est exclusio alterius which is to aid in construction where other clearer indications are wanting." Master Institute of United Artists, Inc. v. United States, 167 F.2d 955, 957 (2d Cir. 1948)(A.N. Hand, Circuit Judge).[5]

There is nothing exotic in rejecting an absolutist approach to interpretation, such as defendants advocate. The reasoning of the insurer would mandate a conclusion that plaintiff has no trouble with asbestos or a smoke-filled room, as long as he avoids isocyanides. It would be downright silly to infer that plaintiff has lungs immune to anything except isocyanides. Even if the doctors might have been more articulate, there is no reasonable conclusion contrary to the view that in pin-pointing a probable original source of plaintiff's lung trouble and in specifying that he avoid

---

[5]One wonders how the author of the denial letter would view his rationale if invoked by teenagers in his family who had been warned against one form of misconduct.

4

that source, they were not saying there was nothing else to avoid. The administrative record is full of material making clear that is not so. Nothing supports defendants' single danger theory except a plainly unreasonable limitation derived from the doctors' occasional choice of words. Apparently even the appeals committee recognized that the theory of the rejection would not fly, and needed another rationale.

Turning to the switched reasoning used by the insurer in the final appeal, based on plaintiff's improved health once he was removed from injurious chemicals, this rationale is also plainly spurious. It confuses symptoms with the underlying disease. Of course if plaintiff has oversensitized lungs he will not be suffering if he stays away from contaminants. Concluding that there is improvement in x-rays of plaintiff's lungs is meaningful only if a lung condition is of a variety that can be tested by x-ray. Does the appeals committee believe that a patient is no longer suffering from an allergy (or overly sensitized lungs) when things are going well and nothing harmful is spotted on the x-rays? The testing which confirmed the original symptoms simply identified symptoms. The treating doctors recognize the continuing nature of the disease as evidenced by recurring symptoms. Nonexpert theories to the contrary, as expressed in the final rejection, are entitled to no weight on review.

Some of us may suppose that lungs can "get well" after healing occurs by removal of plaintiff from some contaminants.[6] This may depend upon the contaminant, and how long and severely there has been exposure. Neither the appeals committee nor a reviewing judge is permitted to "play doctor" and pronounce the plaintiff "cured". He has not been released by his doctors, and

---

[6]If and when this may occur, presumably disability payments may cease, after appropriate procedures have been followed.

5

there is nothing in the record showing an opinion that plaintiff's lungs will ever "get well". The conclusion of the appeals committee to the contrary and that plaintiff is already "well" (or no longer suffering from a disability) is illegitimate, wholly unsupported by the record.[7]

III.

The remaining issue briefed by defendants is a non-issue, neither discussed nor evaluated by the insurer's claims personnel. Assuming plaintiff does have a disability because of his damaged lungs, and that he should not try to resume his prior work, defendants now present argument that perhaps he is not be disabled from "working for wages in any occupation for which [he is or may] become qualified by educating, training or experience." The language quoted is from the definition of disability, and was recited in the denial documents (CL 001, 106) but never singled out and asserted as an alternate ground for denial of benefits, much less factually reviewed by the insurer's agents. Under normal rules of insurance law, an insurer may not rely on factual contentions not taken up with an insured in denying coverage. This limitation on permissible argument applies in ERISA cases. Marlot v. Alliant Techsystems, Inc., 146 F.3d 617, 620 (8th Cir. 1998) (forbidding "sandbagging" after asserting theories in a written denial). In Social Security disability cases an ALJ would need the services of a vocational expert to resolve this sort of question, and the plan in litigation is considerably more generous than the Social Security disability test.[8]

---

[7]In the Social Security disability context, ALJs are frequently warned against imposing their own medical opinions on a record. See, e.g., Edwards v. Barnhart, 383 F.Supp.2d 920, 932 (E.D.Mich. 2005); Green v. Barnhart, 262 F.Supp.2d 1271, 1280 (N.D. Okla. 2003).

[8]It is of interest, although I agree with defendants it is not part of the administrative record that the insurer was bound to consider, that plaintiff has been awarded Social Security disability benefits despite the more rigorous requirements. Pl.Exh.4, filed with summary

6

Defendants did not preserve the issue of plaintiff's possible qualification, by education, training or experience for some other safe work. There was no alternate ruling, assuming disability disabling him from his previous work. This was not part of the decision or even a subject on which the evaluators made inquiry. The defendants now contend that the burden remains on plaintiff to show from the record that he has no safe job opportunities that would not require retraining of a person long employed in an occupation he can no longer perform. They say the insurer does not have a duty to develop the record, as the ALJ does in Social Security disability cases. I accept arguendo the proposition that the insurer need not go to great lengths, such spending significant sums for vocational experts and the like, in investigating a disability claim. The insurer does, however, as this record demonstrates in some parts, have a duty to pursue an investigation, ask questions (e.g. CL 116), and engage in fair-minded give and take–and I have not been shown in this record any such questioning or activity regarding occupational alternatives outside the general line of work plaintiff was doing when he suffered the onset of his disease.

As stated in a case cited by defendants, the insurer needs to conduct a "thorough investigation" of a disability claim. Sahulka v. Lucent Technologies, Inc., 206 F.3d 763, 769 (8th Cir. 2000); Woo v. Deluxe Corp., 144 F.3d 1157, 1161 (8th Cir. 1998). Failure to reasonably investigate often raises the level of scrutiny on appeal. Woo, supra. In this case, coupled with a failure to investigate alternative work (on the erroneous supposition that plaintiff can return to his past work) the defect becomes even more pronounced because it is only on appeal that defendants seek to open the question as an independent ground for rejecting the claim.

---

judgment motion on August 26, 2005.

I acknowledge that in Social Security litigation a remand for dealing with the issue would be attractive, particularly because there is public interest both in allowing benefits to those who are worthy and in avoiding public obligations to those who do not qualify. Defendants suggest this procedure be followed. In this private litigation, however, as in normal civil litigation, I conclude it is more appropriate to confine consideration to the two prelitigation grounds asserted by defendants for denial of the claim, and to deny the suggestion for a second bite (particularly given my assumption that defendants are free to reopen the claim to consider whether plaintiff's lungs are now well).

Having concluded that the insurer's decision was arbitrary and capricious, and not based on any rationale that will survive a "rule of reason", I necessarily overrule the motion for reconsideration. SO ORDERED.

Further proceedings to determine the amount of recovery can best be formulated after a conference with counsel, as requested. An order scheduling such a conference will be forthcoming.

/s/ Howard F. Sachs
HOWARD F. SACHS
UNITED STATES DISTRICT JUDGE

February 20, 2007

Kansas City, Missouri

8

Case 4:04-cv-00220-HFS   Document 85   Filed 02/20/07   Page 8 of 8

I acknowledge that in Social Security litigation a remand for dealing with the issue would be attractive, particularly because there is public interest both in allowing benefits to those who are worthy and in avoiding public obligations to those who do not qualify. Defendants suggest this procedure be followed. In this private litigation, however, as in normal civil litigation, I conclude it is more appropriate to confine consideration to the two prelitigation grounds asserted by defendants for denial of the claim, and to deny the suggestion for a second bite (particularly given my assumption that defendants are free to reopen the claim to consider whether plaintiff's lungs are now well).

Having concluded that the insurer's decision was arbitrary and capricious, and not based on any rationale that will survive a "rule of reason", I necessarily overrule the motion for reconsideration. SO ORDERED.

Further proceedings to determine the amount of recovery can best be formulated after a conference with counsel, as requested. An order scheduling such a conference will be forthcoming.

/s/ Howard F. Sachs
HOWARD F. SACHS
UNITED STATES DISTRICT JUDGE

February 20, 2007

Kansas City, Missouri